IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03094-PAB-MEH

DIANA SLADEK, and
DENNIS SLADEK,

 Plaintiffs,

v.

BANK OF AMERICA, NA,
ARONOWITZ & MECKLENBURG,
THOMAS MOWLE,
MERS, a division of MERSCORP, and
ROBERT ARONOWITZ, individually,

 Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

 Before the Court is a Joint Motion to Dismiss filed by Defendants Bank of America, N.A., MERS, Aronowitz & Mecklenburg, LLP, and Robert J. Aronowitz [filed May 30, 2014; docket #70]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C.COLO.LCivR 72.1C, the matter is referred to this Court for recommendation. The motion is fully briefed, and the Court concludes oral argument would not materially assist in its adjudication of the motion. For the reasons that follow, the Court respectfully RECOMMENDS that the motion to dismiss be **granted**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States*

**BACKGROUND**

Plaintiffs, proceeding *pro se*, initiated this action on November 14, 2013 against Aronowitz & Mecklenburg, Bank of America, N.A., MERS, Robert Aronowitz, (collectively "moving Defendants") and Thomas Mowle. (Docket #1.) Plaintiffs subsequently filed an Amended Complaint on December 19, 2013. (Docket #9.) Plaintiffs filed a Second Amended Complaint on May 25, 2014. (Docket #52.) On April 16, 2014, this Court granted Plaintiffs' request to further amend the complaint; thus, Plaintiffs bring the following claims against the moving Defendants: (Claim 1) Due Process and Equal Protection Clause Violation of the 5th and 14th Amendments to the U.S. Constitution; (Claim 2) Violation of U.S. Const. art. 1, § 8, cl. 3; (Claim 3) Constitutionality of a Statute; (Claim 6) Negligence; (Claim 7) Negligent Infliction of Emotional Distress; (Claim 8) Intentional Infliction of Emotional Distress; (Claim 9) Acquisition and Maintenance of an Interest in and Control of An Enterprise Engaged in a Pattern of Racketeering Activity; 18 U.S.C. § 1961(5), 18 U.S.C. § 1962(b); (Claim 10) Conduct and Participation in a RICO Enterprise Through a Pattern of Racketeering Activity: 18 U.S.C. § 1961(5), 18 U.S.C. § 1962(c); and (Claim 11) Conspiracy to Engage in a Pattern of Racketeering Activity.[2] *See* Second Amended Complaint, docket # 52. Defendants filed the present motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) on May 30, 2014. (docket # 70.) Plaintiffs filed a

---

*v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

[2] Claims 4 and 5 are excluded as they do not apply to these Defendants.

response to the motion on June 23, 2014 (docket #81), and Defendants filed a reply in support of their motion on July 17, 2014 (docket # 99).

The operative complaint seeks: (1) an order granting nullification of the foreclosure of Plaintiffs' home; (2) a declaration that the Colorado foreclosure statute is unconstitutional; (3) a calculation of Diana Sladek's payments to determine whether she was current on her mortgage payments; and (4) an award of damages. Second Amended Complaint, docket #52 at 19. In support of these requests, Plaintiffs allege that Diana Sladek was the purchaser and co-owner of the property, and that Dennis Sladek is Diana's husband and also co-owner of the property pursuant to the marital laws of Colorado. *Id.*, ¶ 10-11. Plaintiffs contend that the original lender on the property was Accredited Home Lenders ("Accredited"). *Id.*, ¶ 12. Further, Plaintiffs state that approximately 18 months after the original financing, Diana Sladek learned her mortgage was an Adjustable Rate Mortgage ("ARM") when she had originally thought it was a 30-year fixed rate loan. *Id.*, ¶ 13. "Plaintiffs made payments until 2011 when with the increasing ARM [they] could no longer make the payments." *Id.*, ¶ 16. Plaintiffs allege a foreclosure proceeding was commenced by Defendant Mowle and Defendant Aronowitz against Plaintiffs' property pursuant to Colo. Rev. Stat. § 38-38-101 in June 2011. *Id.,* ¶ 17. The foreclosure was finalized in July 2012 when a new deed was issued to Defendant Bank of America. *Id.,* ¶ 19.

Plaintiff Diana Sladek then "filed a lawsuit against Accredited in the District Court for El Paso County, Colorado." *Id.*, ¶ 21. Accredited failed to file an answer and a default judgment was entered against it.[3] *Id.*, ¶ 23. The court entered an order for "Diana Sladek to provide evidence of

---

[3] At that time, Accredited had filed for bankruptcy in the U.S. Bankruptcy Court for the District of Delaware. Second Amended Complaint, Docket # 53 at ¶ 25.

3

what she paid on the ARM versus what she should have paid on a 30 year fixed rate." *Id.*, ¶ 24. "Subsequently, the U.S. Bankruptcy Court for the District of Delaware entered an Order of Relief from Stay that the [D]istrict Court of El Paso County Colorado or any court of competent jurisdiction should re-calculate the payments made by Diana Sladek to determine if she was current with her mortgage payments." *Id.*, ¶ 28. Plaintiffs allege that a Certified Public Accountant checked all payments made by Diana Sladek and determined she was current on all mortgage payments at the time of the foreclosure. *Id.,* ¶ 29. Further, Plaintiffs contend they "were to use the property as corporate headquarters for their golf product business and a distribution point to distribute products throughout the U.S. and abroad." *Id.*, ¶ 30.

In the present motion, Defendants inform this Court that Plaintiffs have previously contested the foreclosure of the property seven times in various courts. Motion, docket # 70 at 3. Defendants claim that, during and following the foreclosure sale, the Plaintiffs fully litigated their issues in state and federal courts. *Id.* at 4. Defendants also contend that "Plaintiffs' claims were either resolved through judgement in favor of the Defendants or dismissed for procedural deficiencies, with the exception of the eviction action counterclaims that remain pending." *Id.* Similarly, say the Defendants, the foreclosure sale of the property has remained undisturbed for almost three years. *Id.* Defendants argue that in light of these proceedings, this Court is barred from hearing Plaintiffs' claims pursuant to the *Rooker-Feldman* doctrine. Defendants also raise a statue of limitations defense for claims 1, 2, 3, 6, 7, and 8, and contend that Plaintiffs fail to state claims for relief for claims 1, 2, 3, 9, 10, and 11.

4

## **LEGAL STANDARDS**

**I.        Dismissal under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiffs in this case bear the burden of establishing that this Court has jurisdiction to hear their claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction takes two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to

evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches a factual attack on this Court's subject matter jurisdiction; therefore, the Court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

## II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a

complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

### III.    Treatment of a Pro Se Plaintiff's Complaint[4]

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (quotations and citations omitted). Here, however, Defendants allege Mr. Sladek is an attorney (abeit presently suspended from practicing law) with legal training and experience. The Court, therefore, would hold Mr. Sladek to a higher standard than an untrained *pro se* litigant, and would not grant him the benefits of a liberal construction of his pleadings. *See Church v. City of Cleveland*, No. 1-10-cv-1399, 2010 U.S. Dist. LEXIS 124703, at *2, *6 (N.D. Ohio Oct. 26, 2010) (declining to grant a suspended attorney, appearing *pro se*, "the benefits of liberal construction to which an untrained *pro se* litigant is entitled").

### ANALYSIS

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge would be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

### I.    Rule 12(b)(1) Defenses

#### A.    *Rooker-Feldman* Doctrine

---

[4] This Court recognizes that Plaintiffs are proceeding *pro se*; however, there is evidence that Mr. Sladek is an attorney. Unfortunately, it is unclear which Plaintiff is drafting the pleadings in this case and, thus, the Court cannot determine how the documents should be interpreted. Therefore, this Court recommends that the District Court determine whether Plaintiffs' pleadings should be construed liberally.

7

Defendants argue in their motion that this Court lacks subject matter jurisdiction because Plaintiffs' claims are barred from review pursuant to the *Rooker-Feldman* doctrine. Defendants allege Plaintiffs' claims: (1) Due Process and Equal Protection Clause violations of the 5th and 14th Amendments to the U.S. Constitution; (2) Violation of U.S. Const. art. 1, § 8, cl. 3; and (3) Constitutionality of a Statute, all arise out the foreclosure process and fall under the *Rooker-Feldman* doctrine. The Defendants assert that the Plaintiffs' fourth claim, re-calculation of Plaintiff Diana Sladek's mortgage payments, also requests an order from this Court declaring that she was current on the note. Similarly, Defendants contend the Plaintiffs' fifth claim to nullify the foreclosure is barred under the *Rooker-Feldman* doctrine. Defendants argue that the Plaintiffs' sixth through eighth claims – negligence; negligent infliction of emotional distress; and intentional infliction of emotional distress – seek relief for the harm caused by the alleged wrongful foreclosure and are identical to those dismissed with prejudice in El Paso County District Court. Lastly, Defendants argue that the remaining claims relating to the illegality of the foreclosure would require this Court to review and reject at least one final state court order. Defendants argue that all mentioned claims should be dismissed pursuant to Fed. R. Civ. P 12(b)(1) as a matter of law because review of the state court orders to determine that the foreclosure was improper is barred by this Court pursuant to the *Rooker-Feldman* doctrine.

In Plaintiffs' response, they argue that the *Rooker-Feldman* doctrine does not apply to this case because they were unaware of the alleged fraud committed by Defendants when litigating the previous cases. Plaintiffs contend that they did not know of the alleged fraud until after all matters arising out of the Rule 120 proceeding had been resolved and all appeals time barred. It was not until then that the Plaintiffs learned of the alleged SEC violations committed by the Defendants and

that all asset-backed notes had expired. The Plaintiffs allege that the doctrine would also have no application in the present case because there was a Rule 120 proceeding that initiated the foreclosure, which they argue is not an appealable order.

Defendants reply that Plaintiffs did not cite to any authority to support their claim that the finality of the state court orders is tolled for purposes of the *Rooker-Feldman* doctrine. Defendants reiterate that the foreclosure orders became final for the purposes of *Rooker-Feldman* on June 13, 2011 and, therefore, cannot be appealed before this Court.

The *Rooker-Feldman* doctrine is a jurisdictional prohibition that is based on 28 U.S.C. § 1257, which holds that federal review of state court judgements may be obtained only in the United States Supreme Court. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (holding that the *Rooker-Feldman* doctrine bars "what in substance would be appellate review of the state judgement in a United States district court, based on [a] claim that the state judgement itself violates . . . federal rights.") The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgements rendered before the district court proceedings commenced and inviting district court review and rejection of those judgements." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Tenth Circuit has acknowledged that cases in this district "have reached differing results concerning whether orders in Rule 120 proceedings have sufficient finality under the *Rooker-Feldman* doctrine to prevent relitigation in subsequent federal proceedings." *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1262 (10th Cir. 2012). The court in *Miller* noted that Rule 120 proceedings are not adversarial, do not result in a final judgement, and are generally

9

not candidates for appeal. *See Miller*, 666 F.3d at 1262. Similarly, the Colorado Court of Appeals has stated that "proceedings pursuant to C.R.C.P. 120 are not adversarial in nature, are not final, and generally no appeal may be taken to review the resulting orders." *United Guar. Residential Ins. Co. v. Vanderlaan*, 819 P.2d 1103, 1105 (Colo. App. 1991).

However, even if a court determines a decision is sufficiently final, the *Rooker-Feldman* doctrine bars a Plaintiff's request for injunctive relief, but does not preclude the court from adjudicating claims for damages. *See Amerson v. Chase Home Fin. LLC*, No. 11-cv-01041-WJM-MEH, 2012 U.S. Dist. LEXIS 95642 at *19 (D. Colo., May 7, 2012), *aff'd*, 2012 U.S. Dist. LEXIS 95637 (D. Colo. July 11,2012). "To the extent Plaintiffs seek money damages, Plaintiffs' claims are not an attack on the judgment or proceedings. . .." *Id.*, at *29 (citing *Bolden v. City of Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006)). For instance, a Plaintiffs' request for an order quieting title is unlike claims for money damages, because this form of relief directly challenges the state-court proceedings. *Id.*, at *29-30. Thus, ". . . actions that seek to 'completely undo' finalized state court eviction proceedings are still within the scope of *Rooker-Feldman*." *Id.*, at *30.

Defendants have provided a list of previously filed cases by the Plaintiffs that relate to the foreclosure, but the Court found no final judgments relating to Plaintiffs' claims, other than the Rule 120 proceeding. The Rule 120 proceeding is not always a final judgment in the Tenth Circuit or Colorado; therefore, the Court must determine if Plaintiffs' claims seek money damages or relief directly challenging state-court proceedings. Here, it is clear from the operative pleading that Claims 1, 2, 6, 7, 8, 9, 10, and 11 seek money damages and are not barred by *Rooker-Feldman.* As set forth previously, Claims 4 and 5 do not apply to these Defendants, but Claim 3 for Constitutionality of Statute seeks an order overturing the Rule 120 proceeding, as well as requests

monetary damages. That is, Plaintiffs ask that Colo. Rev. Stat. § 38-38-101 be declared unconstitutional, the deed of trust issued by Defendants be canceled, the foreclosure of their home be declared null and void, and they seek an award of damages for the alleged unconstitutional foreclosure action. Accordingly, Claim 3, except Plaintiffs' request for monetary damages is barred from this Court's review by the *Rooker-Feldman* doctrine and should be dismissed.

## II.     Rule 12(b)(6) Defenses

Defendants further offer supporting arguments in the motion to dismiss for Plaintiffs' alleged failure to state claims for relief under Fed. R. Civ. P. 12(b)(6). They argue the statute of limitations expired for claims: (1) Due Process and Equal Protection Clause Violation of the 5th and 14th Amendments to the U.S. Constitution; (2) Violation of U.S. Const. art. 1, § 8, cl. 3; (3) Constitutionality of a Statute; (6) Negligence; (7) Negligent Infliction of Emotional Distress; and (8) Intentional Infliction of Emotional Distress. They generally argue that Plaintiffs did not meet the minimum standard of pleading with respect to claims: (1) Due Process and Equal Protection Clause Violation of the 5th and 14th Amendments to the U.S. Constitution; (2) Violation of U.S. Const. art. 1, § 8, cl. 3; and (3) Constitutionality of a Statute. They also contend that Plaintiffs did not allege the specifics required under Fed. R. Civ. P. 9(b) for claims: (9) Acquisition and Maintenance of an Interest in and Control of An Enterprise Engaged in a Patter of Racketeering Activity; (10) Conduct and Participation in a RICO Enterprise through a Patter of Racketeering Activity, and (11) Conspiracy to Engage in a Pattern of Racketeering Activity.

### A.     Statute of Limitations

The Supreme Court held that Section 1983 claims are best characterized as personal injury actions and the determination of the statute of limitations period should be based on the state laws

where the action occurred. *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985). In Colorado, the statute of limitations for personal injury actions and tort claims is two years. Colo. Rev. Stat. § 13-80-102(1)(a), (g) (2014). ". . .[A] cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(1) (2014).

Plaintiffs' Section 1983 claims stem from the foreclosure sale, which is when the alleged due process violations occurred. The foreclosure occurred on June 1, 2011; clearly, then, the statute of limitations began accruing on that date because Plaintiffs should have known of the alleged violations. The complaint was filed on November 14, 2013; therefore, the two year statute of limitations has expired for the following claims: (1) Due Process and Equal Protection Clause Violation of the 5th and 14th Amendments to the U.S. Constitution; (2) Violation of U.S. Const. art. 1, § 8, cl. 3; and (3) Constitutionality of Statue, where Plaintiffs are seeking monetary damages for relief.

Likewise, Plaintiffs allege that their tort claims were caused by the Defendants' use of Colo. Rev. Stat.§ 38-38-101 to effectuate the foreclosure of their home. The "use" of the statute would have occurred before the foreclosure sale when the Defendants followed the procedure to foreclose on Plaintiffs' home; thus, Plaintiffs should have known of the harm on the date of the foreclosure sale. Again, the sale occurred on June 1, 2011, but the complaint was filed two and a half years later on November 14, 2013. Accordingly, the two-year statute of limitations has also expired for the tort claims: (6) Negligence; (7) Negligent Infliction of Emotional Distress; and (8) Intentional Infliction of Emotional Distress.

The Court recommends that Claims 1, 2, 3, 6, 7, and 8 be dismissed as barred by the statute of limitations.

### B.   RICO Violation Claims

Plaintiffs argue that the Defendants are an enterprise because Bank of America and MERS are principals for Aronowitz and Meclenburg, and Mr. Aronowitz individually. The Plaintiffs further allege the following claims in the operative complaint:

> Defendants intentionally and fraudulently utilized the foreclosure process for their own financial gain. This was achieved by the Defendants using other companies, owned and controlled by Defendants, to assist in the foreclosure process. Defendants have encouraged attorneys working for them to bill for more time than was actually spent working on a foreclosure. They fraudulently and improperly charged for title documents during the foreclosure process. Defendants did not refund a client's money when the client was entitled to the money and Defendants kept the money.
>
> Defendants tried to bribe a former attorney by offering her $1000 to sign a confidentiality agreement in an effort to hinder a criminal investigation by the Colorado Attorney General. Defendants utilized the mail and wires to conduct criminal and fraudulent activity with the vast majority of their fees being paid by the public. Defendants placed fraudulent documents in the mail to be sent or delivered by the Postal Service. Defendants devised a fraudulent scheme to defraud monies or property by use of the wire in interstate commerce by communicating with the Court, clients, or borrowers telephonically or by the internet. Defendants' fiduciary duty to the public was breached by them fraudulently and intentionally lying about fees that the public paid. Defendants have caused economic harm to the public by intentionally committing larceny, which included obtaining and exercising control of monies belonging to clients without the client's authorization.
>
> Defendants did acquire and/or maintain, directly or indirectly, an interest in or control of a RICO enterprise of individuals who were associated in fact and who did engage in an whose activities did effect interstate and foreign commerce or collection of

an unlawful debt. During the ten calender years preceding April 1, 2014, Defendants did cooperate jointly or severally in the commission of two or more of the RICO predicate acts. The two or more RICO offenses were calculated and premeditated intentionally to threaten the community. All Defendants associated with a RICO enterprise of individuals and entities who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce or collection of an unlawful debt. Lastly, all Defendants did conspire to acquire and maintain an interest in a RICO enterprise engaged in a pattern of racketeering activity.

Defendants argue that Plaintiffs did not sufficiently prove the seven elements of a RICO claim and did not plead them with particularity required under Fed. R. Civ. P. 9(b). Plaintiffs respond that if the Court simply read the entire complaint from end to end, the Court would see that Plaintiffs have adequately pled a RICO violation claim. Plaintiffs state they may have not used the exact language that Defendants contend, but their intention is there and they have pled a RICO claim. Defendants reply that Plaintiffs still did not meet the heightened burden under Fed. R. Civ. P. 9(b) and are relying on this Court to piece together the factual allegations that support their RICO claims.

A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;". 18 U.S.C. § 1061(5) (2014). "(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in or the activities

of which affect, interstate or foreign commerce.[5] (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.[6] (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.[7]" 18 U.S.C. § 1962(b)-(d) (2014). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

"Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO violation and its predicate acts of racketeering with particularity, a requirement justified by the threat of treble damages and injury to reputation." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992) (internal quotations and citation omitted). Plaintiffs are also required to show the Defendants' RICO violation not only was a "but for" cause of the injury, but was the proximate cause of the injury as well. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).

In the present case, Plaintiffs have failed to sufficiently allege each element with particularity and failed to allege Defendants' behaviors were the "but for" and proximate cause of their injuries. Plaintiffs' alleged injury is the foreclosure of their home and all other claimed injuries surround the foreclosure. However, the majority of the Plaintiffs' RICO allegations do not directly involve the foreclosure, but apply to a variety of other alleged violations. The only alleged RICO violation that

---

[5] Claim 9

[6] Claim 10

[7] Claim 11

might involve Plaintiffs' foreclosure is the allegation that Bank of America is a fictitious plaintiff because of a letter stating that the Bank was unable to identify a mortgage account on Plaintiffs behalf. The inquiry to Bank of America was submitted by Plaintiffs on April 15, 2011, and forwarded to the correct recipient on June 11, 2011. This was 10 days after the foreclosure sale took place and six months after the authorization of the sale occurred, which would have released Plaintiffs from the mortgage inherited by Bank of America from Accredited Home Lenders. Thus, as of June 11, 2011, Bank of America did not have any records of the mortgage because the Plaintiffs defaulted on the mortgage several months prior. Other than that claim, Plaintiffs fail to allege any "but for" and proximate cause injury suffered and/or give any specific details required under Fed. R. Civ. P. 9(b) that is related to their injury. Further, Plaintiffs fail to allege any injury they have suffered by the alleged RICO violations.

Thus, Plaintiffs claims: (9) Acquisition and Maintenance of an Interest in and Control of An Enterprise Engaged in a pattern of Racketeering Activity; (10) Conduct and Participation in a RICO Enterprise Through a Pattern of Racketeering Activity; and (11) Conspiracy to Engage in a Pattern of Racketeering Activity should be dismissed for failure to state claims for relief.

## CONCLUSION

The present motion asserts Plaintiffs' claims should be dismissed due to the *Rooker-Feldman* doctrine, statute of limitations, and failure to state claims for relief. This Court concludes that the Second Amended Complaint's allegations demonstrate the Constitutionality of Statute claim is barred from review due to the *Rooker-Feldman* doctrine. The claims related to the constitutionality of the foreclosure and any tort based claims are barred by the two-year statute of limitations. This Court also concludes that the particularity requirements for alleging RICO violations has not been

met by Plaintiffs.

Accordingly, the Court respectfully RECOMMENDS that the District Court **GRANT** Defendants Bank of America, N.A., MERS, Aronowitz & Mecklenburg, LLP, and Aronoqitz's Motion to Dismiss [filed May 30, 2014; docket #70].

DATED this 30th day of July, 2014, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge